Case number 14-7036 TJGEM LLC Appellant v. Republic of Ghana et al. Mr. Lassley for the Appellant, Mr. Bonsabrio for the Appellant. Good morning. Good morning. Michael Lassley with the Appellant. I think we start with the situation that the Supreme Court in the landmark opinions of Bela Lannigan and Ashcroft mandated the trial court must look at the facts, factual matters of reasonable interest and cannot ignore or negate those if they support the plaintiff's possible claim of release. The Congress enacted the defiance of judicial and commercial exception to the affirmative defense of sovereign immunity. And specifically, the unambiguous language and examples of 1603 D&E and the clauses of 1605A2 define and dictate what is meant by commercial acts, activities, and substantial contact with the United States. Are you alleging that there was a direct effect of the defendant's actions in the United States? In your brief, you say there were direct effect, but I didn't see any support for that. What is the direct effect? If you look at the circumstances of the RICO claim, which the trial court did not really consider, the Southway case decides the circumstances of the interrelationship of RICO predicate acts. What's the direct effect of the commercial activity you're alleging, the direct effect in the United States? In the United States, if the loan had been granted, the application for a loan is in violation not only of the protocols and rules of the bank, but the Foreign Practice Act. And the basis of the loan, as we allege, from the Pelley's was the conspiracy, RICO conspiracy and predicate act. So you're saying that the loan would have been paid off with funds that were deposited somewhere in the United States? The loan would have been granted in the United States as to direct effect. I know, but what is the direct effect? Are you arguing that it's the money that would have been deposited? I'm arguing that the loan itself of the U.S. So the loan itself, all right. So what we know from your pleadings is that, what, there was a meeting at the Export-Import Bank and a letter of interest? That's part of it, but not only that, the misappropriation of the Pelley's work product and trade secrets was all part of the circumstances of direct effect. What do we know about the Memorandum of Understanding? Well, the Pelley's never presented it, but we do know about it. What did you tell the district court about it? Well, we told the district court in our pleadings, we didn't have a hearing on the matter, but in our pleadings we told the district court that the Memorandum of Understanding was the essence of the whole case. But what does it say? Well, they never presented it. We never had a copy of the Memorandum of Understanding. What it says, based on the actions of the appellant officials, gun officials, when they went to the bank, they went to the bank with the purpose of trying to get the bank to consider the loan that the appellant had filed a letter, got a letter of interest on. What we know about the Memorandum of Understanding, the very key point we know about the Memorandum of Understanding, is that $10 million was in addition to what the appellant had filed and got the letter of interest on. We also know that there were two inspector general investigations at the bank, inspector general, on the question of what is that $10 million about. We've argued that it was reasonable, and to the trial court, it was reasonable to infer that since there was no letter of interest, there's no interest at all of the appellees until 2013. But in March of 2012, when they used and misappropriated the appellant's letter of interest and other documents, what we do know is that at that point, the bank knew and we knew by inference that there was no explanation for the $10 million increase of the amount of $585 million that we had initially got the letter of interest on. The $10 million was never explained. They never submitted anything to the trial court to explain it or to refute that inference that they were not using our particular documents and our particular work product at that point. So what the trial court knew is that there was an investigation. The trial court knew that there was a $10 million difference and that there was no way to explain it, since there was no project, there was no loan application, there was no loan documents or anything before the bank, U.S. Bank, Export-Import Bank, that would indicate whether or not there was any basis other than what we had filed with the bank and what we had submitted to the bank in terms of contract. So the trial court knew that at the time that the appellant's Canadian officials went to the bank, signed a memorandum of understanding in D.C., and we believe that those was enough information to warrant some consideration, given the bank had the two investigations going on. All right. And it's undisputable that the bank, that the appellate used the information that was sent to the bank and exported, especially the letter of interest and loan application. The most important point from the appellate's point of view is that we were damaged because we had structured an African Marshall Plan. That was the whole purpose of the development and creation of the appellant, was to do that for the Sub-Saharan countries. That was undermined and destroyed, as well as the fact that the circumstances of the development of the work product was misappropriated and used by the appellate. What's the nature of your misappropriation claim? What's the cause of action here? Is it under common law? Is it under D.C. law? I don't think you've told us. I think it could fall under both, Your Honor. But your pleading doesn't tell us that, which I find to be a problem throughout your case. You've made it very hard for both the district court and for us to understand what your theory is. And so what's the misappropriation claim? The misappropriation claim was based on the fact that we had developed this developer work business plan and model, and we had submitted that information to the bank. The bank had agreed to consider it at the $585 million. And your claim is that that's a trade secret? That's what we claim, because it was particularly to the bank and also to the Canadian officials who then sent it to other people. We believe that that is definitely a misappropriation. So is this under D.C. code or under common law? I don't have a specific D.C. code, but I think it covers both. You have to have that. I mean, for us to find a commercial activity exception, there has to be an allegation that the act performed in the United States was an element of the cause of action. How are we supposed to know that when you haven't told us what the cause of action is? The cause of action, in terms of what happened in this case, I think it's clear that what we alleged was factually based on what was taken from us. I would submit to Your Honor that the situation was such that they knew exactly what they were doing in reference to taking the property. They may very well have, but you have to put it in a form that's intelligible to us. And I, for one, have found it very difficult to follow your complaint. Well, I think that the complaint itself focused on what occurred in terms of the actions of the appellees. And I think they had no right to use or to appropriate what we had done. Let me ask you a question. The district court noted that T.J. Jim had published in the record all the documents that it claims were protected by the trade secret. Is that correct? That was after certain documents were submitted to the court. That was after the litigation had begun. It was after, as we claim, misappropriation occurred in use of those documents. The only persons that had the documents that we had and that we were using that we were claiming were misappropriated was the Canadians before this litigation started. Well, after litigation started, those particular events occurred, but not before that. Other than the bank and the Canadians later, the bank initiated it, the Canadians later. That was the extent of what we were dealing with. There was no use or giving of the documents prior to the litigation. All right. Why don't we hear from counsel for appellees? All right. Thank you very much. Good morning. May it please the Court? Good morning. I want to mention briefly that the Solicitor General of Ghana, Mr. Thiel, was here. We believe that the Saudi Arabia versus Nelson case of the Supreme Court disposes of this appeal. And I want to spend a couple of minutes talking about that case. In that case, the Supreme Court held that whether you come under any of the different clauses of the commercial activity exception, that claim has to be based upon the subject commercial activity. So you have to first ask, what is the commercial activity that's at issue? Then you need to ask, is the claim based upon that commercial activity? If it's not, there's no application of the exception. So what happened in Saudi Arabia versus Nelson? Nelson was recruited by Saudi Arabia in the United States, and he signed a contract in the United States to go work for a hospital in Saudi Arabia. When he got there, he was basically a whistleblower. He got arrested, he got tortured, returned to the United States, and sued Saudi Arabia. He said, the commercial activity exception applies because they came to the United States, they recruited me here. Even more than our case, we signed a contract in the United States, and so there was commercial activity here. The Supreme Court said, you're missing the point. You are not suing for breach of contract. You are not suing for what happened in the United States. You are suing because you were tortured in Saudi Arabia. So that claim is based upon the torch inflicted on you in Saudi Arabia, not the preceding commercial activity in the United States. This is the identical case. Why is T.J. Jem bringing a lawsuit? Because they claim that the mayor of Accra— In connection with the commercial activity of the foreign state elsewhere. That's the third clause. They have invoked the clause. That's in the statute, yeah, right. Yeah, the first clause. I'm discussing the first clause first. Okay, yeah. Where you've got to have commercial activity in the U.S. The first clause of the commercial— Well, that's not the problem you face, at least in my mind. The problem you faced is whether at this meeting, where the memorandum of understanding was entered into, whether an act of misappropriation occurred there. Because the signing of that agreement was an act performed in the United States in connection with the commercial activity elsewhere. Do you agree to that? Yes. So let me address both the first clause and the third clause to be thorough. So in terms of the first clause, that would not fit because there was no commercial activity in the United States. Now, in terms of the third clause, Section 1605A2 still requires that the law should be, quote-unquote, based upon the activity in the United States, which was— Yeah, and the claim is that a misappropriation occurred here in the United States. No, it's not. It's not? The allegation, as the district court correctly points out in its opinion, was that misappropriation occurred in Ghana. The request for a bribery occurred, allegedly, in Ghana. Only two things happened in the United States. An MOU was signed, and there were meetings at the Export-Import Bank regarding financing. However, even under the third clause, the claims still have to be based upon those acts, and they are not suing based on those acts. T.J. Jem gets no relief based on the fact that an MOU was signed. Let's imagine it were the case, and this is perhaps a hypothetical, so don't say that's not my case, but let's just imagine that a memorandum of understanding was signed here in the United States and that as part of that, trade secrets were given to the Export-Import Bank, that confidential information that had been developed as part of a proposal that was to be made in Ghana was brought to the United States and given to the bank unlawfully then. Under those circumstances, wouldn't you have an act performed in the United States in connection with the commercial activity elsewhere? That's not what happened here. That's right. But if that is what happened, under those circumstances, we'd find the exception fits, right? Well, perhaps. As a lawyer, I would look at all the facts around your hypothetical. Okay. Why do you say that's not what happened here? Because I think that's what the allegation is. No, the allegation is that the information was provided in Ghana and was misappropriated in Ghana, and that's the finding of fact of the district court. So now on appeal, T.J. Jem had the burden to show that there was an abuse of discretion in making that finding of fact, and they've never done that. That's not the noble. The noble review is on the law, but on the facts, it's going to be abuse of discretion, and I believe that the finding stands. So there are basically two reasons. The one we have discussed, that none of what happened in the United States is an element of the claim. It's not what the claim is based upon. The other reason is that the alleged torts by the mayor, which, by the way, Ghana disputes, but it didn't have to disprove in a motion to dismiss, those are not considered to be commercial activity in any event by the Republic of Ghana under the Fanoff case from the 9th Circuit. The D.C. Circuit hasn't had the opportunity as of yet to adopt Fanoff, but every other circuit has followed that. And the reason why we require actual authority of a foreign government official is because that's what we require of the United States. When you enter into a contract with the United States, it's buyer beware, and you have to make sure that the agent has actual authority. So can I just follow up for a moment on Judge Griffith's hypothetical, would you? Yes. We have held that on a motion to dismiss under 12b-1, the district court should allow sufficient discovery to enable an understanding of what are the underlying facts for the complaint. So here in this case, all we know that I have found about the MOU is in that website article. We know nothing about the details of that, and as I understand counsel's argument even today, it's simply that the inference in the plaintiff's favor as a result of the sequence of events, the timing. But we know nothing about the content of the MOU. Why in this case was the district court not obligated to allow some jurisdictional discovery on that issue? I think there are two reasons. One, when a foreign sovereign is sued, the case is a little different than the normal 12b-1 motion, because the FSIA is intended to create a presumption of immunity, and then the plaintiff has to come forward with evidence. And so it protects the foreign sovereign from the normal procedure. A plaintiff has a much higher burden to come forward with evidence from the start before they file the lawsuit. Here they filed a 250-page complaint with 1,000 pages of exhibits. And I think the district court was correct in saying, you know, enough's enough. And we had over 1,000 pages of pleadings. And, you know, with all due respect to opposing counsel, the district court, to some extent, had to throw its hands up and say, you know, we really don't know what you're alleging. What are your claims? What are your causes of action? This is just a rambling thing. And plaintiffs are not supposed to dump a stack of papers on a district judge and say, you figure it out. Now, the second reason is because it really doesn't matter. They're not suing for breach of the MOU, and there's plenty of authority that we have cited that indicates that based upon language is the limiting language. Let me just make a quick point about Pimentel and the other defendants. Under the Supreme Court's decision in Pimentel, and we have gone through the Rule 19 analysis, clearly AMA and the Republic of Ghana were necessary or required parties. Could I just interrupt and ask you to go back on one issue? The complaint does refer to other officials of the government of Ghana and makes the argument that those officials had actual authority to act on behalf of the government, at least one of them. And even that, I'll get the name wrong, but the man who was assisting the mayor, he claims that there was authority to negotiate on behalf of the government. And so is your response as to both of those that still given the presumption? Our response is that we submitted the declaration of a Ghanaian professor, our expert witness, who disputed that and cited the provisions of Ghanaian procurement law, and that was never disputed. I see. All right. Thank you. And just on Pimentel, I won't re-argue that again, but it extends the benefit of immunity to the rest of the defendants. Thank you. Thank you. Counsel for Appellant, would you like a minute? As the Court just mentioned, the circumstances of Vandepute, he had the authority as the CEO of the AMA. In fact, he was tasked with the authority to negotiate and recommend infrastructure developments and projects. The notion that he was the only person involved was one of the heirs of the trial court. He was involved as well as Samuel. Exhibit number 10 attached to the complaint noted the letter of 12-20-2011 where Samuel Adekte, who is the Metro Coordinating Director of the AMA, indicated that he had indeed the authority to negotiate, along with Vandepute and other people involved in this matter. But there's no reason to conclude that there's no distinction between negotiation powers and scope of your authority as a CEO, as well as Samuel's role in the Metropolitan Assembly, and not having the power to let contracts. And that, I think, was what the issue was in that regard. So we would submit that the notion that that's not the case is also undermined by the notion of Exhibit 51, where the mayor talks about how he was appointed in a modern Ghana news report to deal with the issues of Metropolitan Accra, and he was authorized by the President Mills at that point. So we would submit that the notion that he had no power and the other people didn't have any power. There was a difference between the power and the responsibility to work on issues of the sewage system in Accra and the purpose and the reason to a power to let a contract, which is totally different. The contract was not decided until 2013. It was not granted. The Ex-Im Bank in the exhibit that we submitted, I believe it was Exhibit 55, that was attached to the complaint, indicated that, indeed, the circumstances of the let of the contract and the loan was to the end user, the AMA. All right. Thank you. We'll take the case under advisement.
judges: Rogers, Griffith, Wilkins